MANUFACTURERS' INDUSTRIAL RELATIONS ASSOCIATION and the Trustees of M.I.R.A.–G.M.P. Allied Workers Pension Trust, Plaintiffs–Appellants (93–4260/94–3998), Appellees,

v.

EAST AKRON CASTING COMPANY and Howard Wenk, Defendants–Appellees,

East Akron Casting Company, Defendant–Appellant (93–4293).

Nos. 93–4260/4293, 94–3998.

United States Court of Appeals, Sixth Circuit.

Argued May 8, 1995.

Decided June 21, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 3, 1995.

DAUGHTREY, Circuit Judge.

This ERISA appeal had its genesis in default judgments originally entered by the district court in favor of the plaintiffs, the Manufacturers' Industrial Relations Association and the MIRA–GMP Allied Workers' Pension Trust (collectively "MIRA"), under the Multiemployer Pension Plan Amendments Act of 1980 ("the MPPAA"), 29 U.S.C. §§ 1381 *et seq.* Eleven months after the default judgments were entered, the defendants, the East Akron Casting Company and its president and principal shareholder, Howard Wenk, moved to set aside the default judgments under Fed.R.Civ.P. 60(b). The district court granted the motion and later granted summary judgment on the merits to Wenk, finding that he was not liable to MIRA under the MPPAA. The district court did find that East Akron Casting was liable, however, and granted summary judgment to MIRA, awarding the pension fund approximately $256,000 plus interest. The district court also awarded attorneys fees and costs to Wenk, but denied costs and fees to MIRA as against East Akron Casting.

MIRA now appeals the order granting summary judgment to Wenk, and Akron Casting cross-appeals the order granting summary judgment to MIRA. Because we conclude that the district court erred in setting aside the original default judgments in MIRA's favor, we reverse the judgments on the merits entered below and reinstate the default judgments.

*I. Factual and Procedural Background*

 There is no dispute concerning the applicability of the MPPAA to the parties in this case. The 1980 amendments to ERISA were designed to prevent employers from withdrawing from a multiemployer pension plan without paying their share of unfunded, vested benefit liability, thereby threatening the solvency of such plans. *See Mason and Dixon Tank Lines, Inc. v. Central States Pension Fund,* 852 F.2d 156, 158–59 (6th Cir.1988) (the MPPAA "requires employers who withdraw, completely or partially, from a

Lawrence F. Raniszeski, Bloomfield Hills, MI, Edward J. Riegler, Grisi & Riegler, Akron, OH, Harold G. Belsheim (argued), Harold G. Belsheim, William D. Shultz (briefed), Suelthaus & Kaplan, Fairview Heights, IL, for plaintiffs-appellants.

Helmut A. Rothenbuecher (argued and briefed), Brouse & McDowell, Akron, OH, for defendants-appellees.

Before: SUHRHEINRICH and DAUGHTREY, Circuit Judges; HEYBURN, District Judge.*

---

* The Honorable John G. Heyburn, II, United States District Judge for the Western District of Kentucky, sitting by designation.

multiemployer pension plan to contribute to the plan a proportionate share of the unfunded, vested benefits").

Nor is there any dispute concerning the facts that gave rise to the litigation between MIRA and the two defendants. During the 1980's, East Akron Casting Co., a small Ohio corporation, operated a foundry which employed a number of MIRA plan participants. During this time, Wenk was the president, CEO, and major shareholder of the company, which was obligated by certain collective bargaining agreements to contribute to the plan.

On May 1, 1987, East Akron Casting ceased its manufacturing operations and leased out its foundry to another casting company. Four days later, on May 5, 1987, MIRA first alerted the defendants as to their potential withdrawal liability. Then, in January 1988, pursuant to 29 U.S.C. §§ 1382 & 1399(b), MIRA sent a notice and demand letter to the defendants concerning their withdrawal liability, which MIRA determined to be $255,999. By this same letter, MIRA also informed the defendants that they had a right to contest their liability by arbitration within 60 days, pursuant to 29 U.S.C. § 1401(a)(1), and that the failure to exercise this right would cause the assessment to become due and owing, pursuant to 29 U.S.C. § 1401(b)(1).

Wenk responded in two substantially identical handwritten letters, dated April 25 and 29, 1988. In the April 25 letter, Wenk wrote:

As I have stated before, East Akron Casting Co. is no longer a foundry. It is a leasing company. The fee of $256,000 for pension withdrawal is much too high and impossible to pay. I would like some information on ways other foundries have handled this liability in the past.

However, at no time did the defendants request arbitration.

MIRA declined to provide the defendants with the requested information and, on October 28, 1988, notified the defendants that it was filing an action in federal court seeking declaration of withdrawal liability pursuant to 29 U.S.C. § 1451(a)(1). Suit was filed on April 27, 1989. On September 19, 1989, the defendants having failed to respond, MIRA moved for a default judgment, which was granted on September 22, 1989. The court held the defendants jointly and severally liable for $257,376, plus interest and attorney fees and costs.

In August 1990, seeking satisfaction of its judgment, MIRA filed an action in state court. On August 22, 1990, 16 months after the complaint was filed, the defendants appeared in district court and moved, pursuant to Fed.R.Civ.P. 60(b), for relief from the default judgment, but did not specify under which subsection of the rule they were seeking relief.

On June 11, 1991, also without proper specification, the court granted the defendants' Rule 60(b) motion. In doing so, the district court applied the three-factor test set forth in *United Coin Meter Co., Inc. v. Seaboard Coastline RR*, 705 F.2d 839, 845 (6th Cir.1983):

1. Whether the plaintiff will be prejudiced;

2. Whether the defendant has a meritorious defense; and

3. Whether culpable conduct of the defendant led to the default.

As to the first factor, the court found that the "plaintiff has failed to show any prejudice which might result to it if the case were reopened." As to the second factor, the court found that the defendants' arguments—that Wenk, as an individual, could not be an employer within the meaning of the MPPAA and that East Akron Casting's continued operation as a lessor precluded the finding of a withdrawal within the meaning of the MPPAA—constituted meritorious defenses. As to the third factor, the court found that the defendants' conduct amounted to "reckless disregard," noting that "it cannot seriously be argued that Wenk was unable to grasp the seriousness of the situation." However, despite this finding of culpability and relying on *Berthelsen v. Kane*, 907 F.2d 617 (6th Cir.1990) (*per curiam*), the court set aside the default judgment, saying:

Willful evasion of service of process amounts to behavior which is certainly more reprehensible than failure to answer a complaint, regardless of a defendants'

contemplation of the gravity of the lawsuit. If the Sixth Circuit in *Berthelsen* was willing to set aside a default judgment even though the defendant willfully evaded service of process, then this court has no choice but to do likewise in the case at bar.

Subsequently, Wenk moved for summary judgment, arguing that he was not an employer within the meaning of the MPPAA and, therefore, could not be individually responsible for withdrawal liability. The district court granted the motion, relying primarily on the ruling in *Scarbrough v. Perez*, 870 F.2d 1079 (6th Cir.1989), that, under the MPPAA, the term "employer" does not encompass corporate officers who, therefore, can not be held individually responsible for withdrawal liability absent the personal assumption of corporate debt or fraud or misconduct separate from the issue of withdrawal liability. The district court then granted MIRA's summary judgment motion against East Akron Casting and imposed withdrawal liability in the amount of $255,999, plus interest.

Still later, in January 1994, Wenk moved for fees and costs against MIRA, and MIRA moved for fees and costs against East Akron Casting. The district court awarded fees and costs to Wenk but denied MIRA's motion, citing its discretionary authority to do so under 29 U.S.C. § 1451(e).

## II. *Analysis*

Although the district court did not indicate the subsection of Rule 60(b) under which it was granting relief in setting aside the default judgments in this case, even a cursory reading of the rule would indicate that only subsection (b)(1) is relevant to the facts of this case.[1] Rule 60(b)(1) provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect ...

We review the grant or denial of a Rule 60(b) motion for abuse of discretion. *Lewis v. Alexander*, 987 F.2d 392, 396 (6th Cir.1993). However, "[a] party seeking relief from judgment under Rule 60(b) must show that its case comes within the provisions of the Rule." *Id.* (citing *In re Salem Mortgage Co.*, 791 F.2d 456, 459 (6th Cir.1986)). Because we are convinced that the defendants wholly failed to carry their burden in this respect, we must conclude that the district court abused its discretion in granting relief under Rule 60(b)(1).

The district court did not err in deciding to apply the three-factor test in *United Coin Meter, supra*, to the facts in this case. Instead, the error occurred when the court, in reviewing the "culpability factor," looked to the *Berthelsen* case as controlling and, additionally, constructed an otherwise legally non-existent distinction between "reckless disregard" and "willful culpability" or "intentional disregard." Moreover, our decision in *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290 (6th Cir.1992), decided after the district court's entry of final judgment in this case, makes clear that the default judgments initially entered by the district court should not have been set aside.

The district judge noted that "Wenk ... had notice of an ensuing lawsuit nearly five months in advance of the filing of the complaint and that there was more than a quarter of a million dollars at stake. Thus, although it is recognized that Wenk notified plaintiffs several times of his belief that his company could not be held liable, it cannot seriously be argued that Wenk was unable to grasp the seriousness of the situation." Characterizing Wenk's conduct as "culpable," the court nevertheless found that relief from the default judgment was warranted, holding that "[i]f the Sixth Circuit in *Berthelsen* was willing to set aside a default judgment even

---

1. The residual clause in rule 60(b)(6), permitting relief from a final judgment for "any other reason justifying relief from the operation of the judgment," has been held applicable "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Olle v. Henry &* *Wright Corp.*, 910 F.2d 357, 365 (6th Cir.1990), quoted in *Lewis v. Alexander*, 987 F.2d 392, 395 (6th Cir.1993). There are no such "exceptional or extraordinary circumstances" in this case and none are claimed. Nor are subsections (b)(2)–(5) applicable, leaving subsection (b)(1) as the only route to possible relief.

though the defendant willfully evaded service of process, then this court *has no choice* but to do likewise in the case at bar." (Emphasis added.)

A review of *Berthelsen,* however, shows conclusively that it is not entitled to the controlling weight assigned to it by the district court. The court did acknowledge that *Berthelsen* is a Rule 55(c) case, rather than a Rule 60(b) case, but found the distinction insignificant, in view of this court's application of *United Coin Meter's* three-prong test to cases under both rules. It turns out, however, that this distinction has more significance than the district court was willing to give it.

In *Berthelsen,* we admittedly reversed an entry of default, despite finding the defendant culpable, because he "evaded service of process." 907 F.2d at 622. However, *Berthelsen* was decided under the laxer standard of Rule 55(c), which applies to an entry of default, not a judgment of default.[2] The defendant in *Berthelsen,* unlike the defendants here, moved to set aside an entry of default two months after its entry and well before the default judgment was entered. *Id.* at 620. Furthermore, in *Berthelsen,* there was less than a three-month lapse between the filing of the complaint and the defendant's first appearance. We held:

> The same considerations exist when deciding whether to set aside either an entry of default [under Rule 55(c) ] or a default judgment [under Rule 60(b) ], *but they are to be applied more liberally when reviewing an entry of default.* While a default judgment may be vacated only by satisfying the stricter standards applied to final, appealable orders under Fed.R.Civ.P. 60(b), an entry of default may be set aside for "good cause shown." Fed.R.Civ.P. 55(c).

*Berthelsen* at 620 (emphasis supplied) (citing *Shepard Claims Serv., Inc. v. William Darrah & Assoc.,* 796 F.2d 190, 194 (6th Cir. 1986)).

Given this distinction, the district court should have bypassed *Berthelsen* and looked

for guidance to our application of the three-factor test to the facts in *United Coin Meter.* That litigation was brought under 60(b)(1) and involved a defendant who had filed a motion to dismiss within two months of the filing of the complaint. 705 F.2d at 840. The defendant also actively opposed the plaintiff's motion for a default judgment. *Id.* at 841. Most importantly, the parties had informally agreed to an extension giving the defendant additional time in which to file an answer, and that period had not expired when the plaintiff filed its motion for a default judgment. *Id.* at 841–43. Finally, the result in *United Coin Meter* turned on extenuating circumstances not present here, including the district court's questionable reliance on his law clerk's recollection of a conversation with one of the parties. *Id.* at 843, 846. It is little wonder that, on appeal, we were willing to order the default judgment entered by the district court set aside on the basis of "mistake, inadvertence, surprise, or excusable neglect." Here, by contrast, the defendants took *no* action during the five-month period between the filing of the complaint in federal court and entry of the default judgment. Indeed, they took *no action at all* until—11 months after judgment—the plaintiff filed a collection suit in state court. Moreover, as far as the record before us is concerned, the defendants offered no reason for their inaction during that 16–month period, or for their failure to utilize arbitration in the months preceding instigation of the litigation in federal district court.

Nor are we persuaded that the defendants' culpability in this case can be dismissed as "merely reckless" (as opposed to "willful or intentional") and, therefore, insufficient to counterbalance the other two *United Coin Meter* factors. The district court based this distinction on language in *Johnson v. Detroit,* an unpublished opinion of this court that, because it has no precedential value, cannot be given any weight in this case. Moreover, the distinction relied upon by the district court nowhere appears in the *Johnson* opinion, which, in reviewing the culpability factor

---

**2.** Federal Rule of Civil Procedure 55(c) provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."

of *United Coin Meter*, contrasts noncompliance that is "willful and repeated" with conduct that is "merely negligent or an isolated matter of oversight." "Willful and repeated" conduct, according to *Johnson*, "might well lead a court to decide that the culpability factor *alone* justifies entry of a default judgment." *Johnson v. Detroit*, No. 89–1284, 1989 WL 153550, at *2, 1989 U.S.App. LEXIS 19373 at * 6 (6th Cir. Dec. 20, 1989) (emphasis added). Were we forced to describe the defendants' conduct in this case either as "willful and repeated" or as "merely negligent or an isolated matter of oversight," we certainly could not say that their failure to utilize arbitration and their 16 months of inaction in response to federal litigation against them amounted to mere negligence or oversight.

This semantic exercise has become moot, however, in view of *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290 (6th Cir. 1992), our most recent pronouncement concerning the setting aside of a default judgment under Rule 60(b). We suspect that if our opinion in *Waifersong* had been released before the defendants' Rule 60(b) motion was decided, the district court's ruling in this case would have been different.

Echoing the holding in *United Coin Meter*, we first observed in *Waifersong* that, under Rules 55(c) and 60(b),

> ... a stricter standard applies for setting aside a default once it has ripened into a judgment. When a defendant seeks relief from a default that has been entered by the clerk upon a plaintiff's request, the district court enjoys considerable latitude under the "good cause shown" standard. But once the court has determined damages and a judgment has been entered, the district court's discretion to vacate the judgment is circumscribed by public policy favoring finality of judgments and termination of litigation. Rule 60(b) reflects this public policy by requiring greater specificity from a moving party before a court will set aside a default judgment. While the standards for granting relief differ, the factors to be considered by the court are said to be similar and to include:

> (1) Whether culpable conduct of the defendant led to the default,
> (2) Whether the defendant has a meritorious defense, and
> (3) Whether the plaintiff will be prejudiced.

*Id.* at 292 (citing *United Coin Meter*, 705 F.2d at 845, and 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §§ 2692, 2694(1983)). The *Waifersong* court went on to add:

> In practice, however, the methodology for considering these factors and the weight to be accorded them depends on whether the court is confronted by an entry of default or a default judgment. When asked to set aside an entry of default, a court considers the first factor, defendant's culpability, in the general context of determining whether a petitioner is deserving of equitable relief. But when it is a judgment the defendant is seeking to avoid, the specific requirements of Rule 60(b) narrow the scope of the court's equitable inquiry. When relief is sought under Rule 60(b)(1), the culpability factor is framed in terms of "mistake, inadvertence, surprise, or excusable neglect." *Furthermore, while it may be argued that the three factors are to be "balanced" by the court in determining whether to set aside an entry of default, balancing is demonstrably inappropriate when a court initially proceeds, as in the instant case, under Rule 60(b)(1).* That is because the rule mandates that a defendant cannot be relieved of a default judgment unless he can demonstrate that his default was the product of mistake, inadvertence, surprise, or excusable neglect. *It is only when the defendant can carry this burden that he will be permitted to demonstrate that he can also satisfy the other two factors: the existence of a meritorious defense and the absence of substantial prejudice to the plaintiff should relief be granted.*

*Id.* (emphasis added; footnote omitted).

Applying *United Coin Meter*, as clarified by *Waifersong*, to the facts of this case, we conclude that the defendants have not carried their burden of demonstrating that their default was the product of mistake, inadver-

tence, surprise, or excusable neglect. We further conclude that it was abuse of discretion to set aside the default judgments entered in the plaintiff's favor in the absence of such a showing.

In reaching this determination, we reject the defendants' argument that *Waifersong* is inconsistent with *United Coin Meter* and, therefore, that it violates our self-imposed "law of the circuit doctrine." We think *Waifersong* is more accurately described as a compatible extension of *United Coin Meter* and its progeny. While the earlier cases admittedly speak in somewhat vague terms of a "balancing" of the three-factor test applicable in Rule 60(b) cases, a thorough review of those cases indicates that the *result,* as a practical matter, almost invariably depends on the culpability factor. Because we conclude that *Waifersong* is not "new law," we likewise conclude that there is no viable retroactivity question involved here.

For the reasons stated above, we REVERSE the judgments entered by the district court on the merits and REMAND the case to the district court for entry of orders reinstating the default judgments.