108 F.3d 1376
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Tina M. DAVIS, Plaintiff-Appellant,
v.
Mike McNEA, Alliedsignal, Inc., Bendix Automotive North
America Defendants-Appellees.
 No. 96-5272.
 United States Court of Appeals, Sixth Circuit.
 March 18, 1997.
 
 Before: MARTIN, Chief Judge; NORRIS and MOORE, Circuit Judges.
 OPINION
 MOORE, Circuit Judge.
 
 
 1
 Plaintiff-Appellant Tina M. Davis appeals the district court's order granting summary judgment to Defendants-Appellees Mike McNea, AlliedSignal, Inc., and Bendix Automotive North America in this sexual harassment case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et. seq.
 
 
 2
 * Davis began working at AlliedSignal's plant in Clarksville, Tennessee on May 6, 1994. She was assigned to the manufacturing line, where her supervisors were Robert Lyle, Manufacturing Coordinator, and James Fox, Business Team Leader-Manufacturing. McNea was a Quality Analyst overseeing the manufacturing line. He attended regular meetings with the employees to instruct them and reprimanded them when proper procedures were not followed. Though Davis was placed at AlliedSignal by Kelly Temporary Services, she wanted a permanent full-time position at the plant. She made this desire known to Lyle, Fox, and McNea.
 
 
 3
 Davis alleges that McNea began harassing her immediately. She offered evidence that he frequently would approach her from behind while she worked and touch her on the shoulder and hips in a manner that she claims was unwelcome, and that he would follow her on lunch and smoking breaks. Davis also alleges certain incidents that she claims constituted unwelcome attention, such as inviting her out for drinks (along with other co-workers), and giving her money to pick up a sandwich for him, as she had on a couple of occasions when buying her own lunch. Davis alleges that these incidents not only made her uncomfortable, but also caused her to feel that other employees would think she and McNea were intimately involved. Davis also presented evidence that after she expressed her desire for permanent employment and her willingness to "do anything" for the job, by which she claims to have meant additional training, etc., McNea told several coworkers that he had "finally found a girl named Tina who would do anything for a job."
 
 
 4
 A temporary employee normally would not be considered for regular employment at AlliedSignal until he or she had worked for a ninety-day period. McNea told Davis that the period could be waived at his recommendation, and that if she would bring him a copy of her application, he would give it to James Fox with a recommendation to hire her. McNea has stated that it was his understanding that the ninety-day period could be waived if a department manager recommended that a temporary employee be interviewed, J.A. at 137-44; in fact, McNea had previously assisted two other temporary employees to obtain regular employment this way. He told Davis that "she would owe him big" if he helped her. He then asked her several times in the following days if she had put in her application yet. She alleges that she believed that McNea was seeking sexual favors in exchange for a recommendation to be interviewed.
 
 
 5
 On Thursday, May 19, 1994, almost two weeks after Davis started working at AlliedSignal, Davis told Lyle, her supervisor, that she felt "uncomfortable" around McNea, and that McNea had repeatedly asked her about her application and had told her that "she would owe him big and had better be nice to him" if he helped her get a job. The next day, she went to Gina Botters, the Clarksville Branch Supervisor for Kelly, to complain about a "problem" with McNea. She told Botters that McNea followed her on her breaks and visited her work station frequently; she did not tell Botters that McNea had touched her or said anything sexual. Botters told Davis that she could be reassigned to another shift at AlliedSignal or to a different company. Davis said that she would let Botters know on Monday, May 23, if she wanted Kelly to take either action.
 
 
 6
 On Friday, May 20, at about 3:45 p.m., Lyle told his supervisor, Fox, about the complaint; he then brought Davis to Fox, who met with her to discuss the allegations for thirty to forty minutes. Fox and Lyle both claim that Davis did not tell them about the alleged touching. Fox told Davis that McNea did not have the authority to hire or fire employees, that Davis should not be concerned about her job, and that her complaint would be handled. Fox then contacted Sherry Richards, AlliedSignal's Regional Human Resources Manager, and told her of the complaint. They attempted to reach McNea's supervisor but learned that he was out of town and would return on Monday. Richards told Fox that she would investigate the complaint on Monday, May 23, the next regular workday.
 
 
 7
 On Saturday, May 21, McNea allegedly asked Davis if she had brought him a sandwich; when she told him that she had not, he touched her on the side of her ribs, just under her arm, and told her she was "not being nice." Davis became upset and went to her team leader, Tony Thompson, to tell him she was quitting. Thompson called Fox at home, who tried unsuccessfully to contact both Richards and the plant Human Resource Coordinator before going to the plant himself. Davis told Fox about the incident and her claim that McNea's comments had made her feel that the other employees would believe that "something [was] going on" between her and McNea, and said that she was quitting her job.
 
 
 8
 On Monday, May 23, Richards met with McNea and his supervisor to investigate Davis's allegations, which McNea denied. Richards advised him that sexual harassment would not be tolerated and that he would be disciplined if her investigation found any inappropriate action. Richards attempted to arrange a meeting with Davis, who refused to attend. Based on Davis's discussions with Fox, and with no corroborating evidence to support Davis's allegations, Richards did not find what the company believed to be sexual harassment; no disciplinary action was taken.
 
 
 9
 Davis presented the affidavit of another female employee, Gladie Lucas, who claimed that she had complained to Lyle on May 13, 1994, one week before Davis's complaint, that McNea had harassed her by touching her and making sexual comments and propositions, and had tried to hit her with his car for refusing his advances. Lucas also claimed that Lyle was aware of the harassment because some of it had occurred in his presence. She alleged that although Lyle had told her that he would take care of her complaint, no action had been taken against McNea.
 
 
 10
 Davis brought this suit in federal court, alleging both quid pro quo and hostile environment sexual harassment. The district court granted the defendants summary judgment on the ground that AlliedSignal's response upon learning of the harassment was "adequate and effective," and that therefore it protected the company from liability. J.A. at 55.[1] The court also denied Davis's motion to reconsider, holding that Davis had failed to submit evidence that McNea had actually thwarted her efforts to obtain permanent employment.
 
 II
 
 11
 This court reviews a grant of summary judgment de novo. Plott v. General Motors Corp., 71 F.3d 1190, 1193 (6th Cir.1995). We must view all facts and inferences in the light most favorable to the nonmovant. Id. The party opposing summary judgment must point to a genuine dispute as to a material fact. Id.
 
 
 12
 * An employer can be held liable for hostile work environment sexual harassment only if the harassing employee's actions "were foreseeable or fell within [that employee's] scope of employment" and the employer failed to respond adequately and effectively. Kauffman v. Allied Signal, Inc., 970 F.2d 178, 184 (6th Cir.), cert. denied, 506 U.S. 1041 (1992); accord Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 803 (6th Cir.1994). The standard for finding employer liability is "one of failure-to-correct-after-notice or duty to act after knowledge of harm." Fleenor v. Hewitt Soap Co., 81 F.3d 48, 50 (6th Cir.), cert. denied, 117 S.Ct. 170 (1996). See also Bouton v. BMW of North America, Inc., 29 F.3d 103, 108, 110 (3d Cir.1994); Nash v. Electrospace Sys., Inc., 9 F.3d 401, 404 (5th Cir.1993).
 
 
 13
 In this case, the district court granted summary judgment on the ground that AlliedSignal had responded adequately and effectively. Lyle and Fox acted quickly on Davis's complaint, with Lyle taking Davis directly to Fox within a day of Davis's complaint, and Fox contacting Richards immediately after hearing Davis's allegations and trying to contact Richards and another human resources manager immediately after talking to Davis on Saturday. Richards then began to investigate the allegations on Monday, the first regular business day after the complaint, which she had received late in the afternoon on Friday. She began by confronting McNea with the allegations, and cautioned him to choose his words and actions toward female employees carefully. She told him that the company took sexual harassment seriously and that he would be disciplined if the investigation found that he had acted inappropriately.
 
 
 14
 Although Davis experienced another incident of alleged sexual harassment on Saturday, May 21, the day after she lodged a complaint, AlliedSignal's response cannot be deemed inadequate under the circumstances. The court must consider the severity and type of harassment in evaluating the adequacy of the employer's response. See, e.g., Barrett v. Omaha Nat'l Bank, 726 F.2d 424, 427 (8th Cir.1984) (holding that an employer that had reprimanded employees within four days of receiving a complaint of sexual comments and touching had taken "immediate and appropriate corrective action"). Davis had alleged that McNea followed her on breaks and visited her on the line, touched her shoulders and hips, and made comments that, while inappropriate, were not overtly sexual. Lyle's one-day delay in passing on the complaint was not unreasonable, and neither was Richards's waiting until the next business day, less than seventy-two hours later, to question the alleged harasser.
 
 
 15
 Davis nevertheless contends that the company's response could have been more prompt, based on evidence that she presented that Gladie Lucas had complained of sexual harassment by McNea one week before Davis complained, and ten days before McNea was confronted with the complaints. Even the Lucas complaint, however, does not render AlliedSignal's response to Davis's complaint inadequate. Considering the degree of severity and the type of behavior alleged, particularly by Davis, the investigation does not seem to have been delayed unreasonably.
 
 
 16
 As to the effectiveness of the action taken, Davis cannot demonstrate that the company's response was ineffective because she quit two days after she first complained of the harassment, only one day after she had been told that her complaint would be addressed. Moreover, Davis refused to aid in the investigation, making a company determination that harassment had occurred more difficult. While we do not intend to suggest that an employee must stay and endure ongoing harassment in order to prevail on a hostile environment claim, the standard for imposing employer liability does require that the employer be given an opportunity to take reasonably adequate and effective action before it can be held liable for failing to do so.
 
 B
 
 17
 To prove a quid pro quo sexual harassment claim under Title VII, a plaintiff must demonstrate:
 
 
 18
 (1) that the employee was a member of a protected class; (2) that the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; (3) that the harassment complained of was based on sex; (4) that the employee's submission to the unwelcomed advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to a supervisor's sexual demands resulted in a tangible job detriment; and (5) the existence of respondeat superior liability.
 
 
 19
 Highlander v. K.F.C. Nat'l Management Co., 805 F.2d 644, 648 (6th Cir.1986).
 
 
 20
 In contrast to a hostile work environment claim, an employer cannot shield itself from liability for quid pro quo harassment by responding promptly and effectively to a complaint. See Pierce, 40 F.3d at 803 (imposing strict liability under a theory of respondeat superior); Kauffman, 970 F.2d at 186 (same); Highlander, 805 F.2d at 648-49 (same). To establish employer liability, a plaintiff need not prove that the harassing employee had authority to hire or fire employees, but only that the employee had " 'significant control' over employment conditions." Kauffman, 970 F.2d at 186. In this case, McNea himself stated that his understanding was that the ninety-day waiting period for a temporary employee could be waived on a recommendation from a department manager, and that he had been able in the past to help two such employees obtain regular employment. Davis presented at least an issue of fact as to the amount of control McNea had.
 
 
 21
 The district court denied Davis's motion to reconsider, holding that she had failed to establish the fourth prong of a quid pro quo claim.[2] Citing an unpublished opinion by this court, the district court held that Davis had "failed to submit evidence that Defendant McNea did indeed thwart her efforts to obtain permanent employment at Defendant Allied Signal [sic]." J.A. at 18 (citing Reed v. Delta Air Lines, Inc., 1994 WL 56930 (6th Cir. Feb. 24) (per curiam), cert. denied, 115 S.Ct. 190 (1994)).[3]
 
 
 22
 Although Davis offered evidence of unwelcome advances and possible conditioning of a benefit on sexual favors, she failed to present evidence of a causal relation. The fourth prong of the test for quid pro quo harassment requires a connection between the plaintiff's reaction to unwelcome advances and job-related consequences of that reaction. Henson v. City of Dundee, 682 F.2d 897, 909 (11th Cir.1982) ("As in the typical disparate treatment case, the employee must prove that she was deprived of a job benefit which she was otherwise qualified to receive because of the employer's use of a prohibited criterion in making the employment decision."), cited in Highlander, 805 F.2d at 648; Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 783 (1st Cir.1990) ("It is the essence of quid pro quo harassment that the employee 'was subject[ed] to unwelcome sexual advances by a supervisor ... and ... her reaction to these advances affected tangible aspects of ... her compensation, terms, conditions, or privileges of employment....' ") (emphasis and alterations in original) (citations omitted), quoted in Kauffman, 970 F.2d at 187.
 
 
 23
 Because Davis quit working at AlliedSignal only two weeks after starting, she cannot prove that she would not have been able to obtain permanent employment before the end of the initial ninety-day period, or even that McNea would have withheld his recommendation for an interview. Though, again, we do not hold that an employee must stay at a job and endure continuing harassment, in this case Davis cannot prove any causal tie between the alleged advances and her job status or opportunities. Therefore, she must fail the fourth prong of the Highlander test, and summary judgment was proper.
 
 
 24
 For the reasons stated above, we AFFIRM the grant of summary judgment in favor of the defendants.
 
 
 
 [1]
 The district court also held that Davis could not sue McNea individually under Title VII. See, e.g., Miller v. Maxwell's Int'l, 991 F.2d 583 (9th Cir.1993), cert. denied sub nom. Miller v. LaRosa, 510 U.S. 1109 (1994). Because Davis does not appear to challenge that holding, we do not find it necessary to decide the issue
 
 
 [2]
 The court remarked that "it is unclear from her complaint that Plaintiff asserts a cause of action under the quid pro quo theory of sexual harassment...." J.A. at 17 (memorandum denying the motion to reconsider). The complaint, however, alleged that McNea had "insinuated he would guarantee a regular full-time job with Defendant manufacturing facility [AlliedSignal] in exchange to [sic] sexual favors." J.A. at 8 (complaint p 10)
 
 
 [3]
 AlliedSignal contends that Davis's claim must fail because of the lack of a "specific request" such as that in Reed. That, however, is not the law; in fact, the holding in Reed itself did not rest on that basis. The Highlander test does not require a specific request; "sexual advances" are sufficient to establish a violation. Moreover, even if Reed could be interpreted to conflict with Highlander, we remind counsel that under the rules of this circuit, an unpublished opinion is of no precedential value. See Manufacturers' Indus. Relations Ass'n v. East Akron Casting Co., 58 F.3d 204, 208 (6th Cir.1995)