**Martha J. SIMMONS, Plaintiff,**

v.

**OHIO CIVIL SERVICE EMP. ASSOC., Afscme Local 11, AFL–CIO Defendant.**

No. C2–00–1208.

United States District Court, S.D. Ohio, Eastern Division.

April 10, 2003.

Martha J. Simmons, Dublin, OH, Pro se.

Linda Kathryn Fiely, OC-SEA/AFSCME–2, Westerville, OH, for Defendant.

### OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court for consideration of the Defendant's Motion to Dismiss Plaintiff's Amended Complaint. (Doc. # 25). The Court also considers Plaintiff's Memorandum in Opposition in which she also requests reconsideration of the order granting Defendant's. Motion for Relief from Judgment. (Doc. # 30). For the reasons stated below, Defendant's Motion is granted and Plaintiff's Motion is denied.

### I.

Plaintiff, Martha J. Simmons ("Plaintiff"), proceeding without the assistance of counsel, brings this action against her former union, Ohio Civil Service Employee Association, AFSCME Local 11, AFL–CIO ("AFSCME"). As the court construes her ·Complaint, filed in the form of a letter, she alleges AFSCME misrepresented her in a dispute against her former employer, the Ohio Department of Youth Services ("DYS") and otherwise discriminated against her based upon her alleged disability and race. Specifically, she alleges that AFSCME failed to adequately represent her in a hearing before the Equal Employment Opportunity Commission ("EEOC") as to charges she filed against DYS. (*Comp.* at P.1). DYS is not a party-defendant in this matter.

This Court's jurisdiction is predicated upon 42 U.S.C. § 12117 et seq. and 42 U.S.C. § 2000e *et seq.* The Court entertains this action pursuant to its authority under 28 U.S.C. § 1331.

## II.

Martha J. Simmons began employment with DYS in 1997 as a food service worker. (*Plaintiff's Reply* at P. 4). Later, Simmons worked for DYS as a mail clerk messenger. *(Id.)* In October of 1998, Simmons sustained injury to both knees necessitating surgery and time away from work. (*Compl.* at Exh. 1). Simmons returned to work on July 9, 1999 at which time she entered into a written agreement with DYS entitled "Work Trial Program Participation Agreement." (*Amend. Compl.* at Exh. C). The purpose of the agreement was to identify medical limitations that affected Simmons' ability to perform the duties associated with her job and to assign tasks to Simmons that were suitable for her condition. By its terms, the agreement would extend for a maximum of thirty (30) days. *(Id.)*.

After agreement was signed, Simmons became dissatisfied with DYS's performance under the agreement. Simmons challenged whether she should or could comply with the return-to-work date contained in the agreement, contending that it conflicted with her physician's instructions regarding her release to work. (*Compl.* at P.1). Simmons also maintained that the agreement ignored her physician's instructions regarding her work limitations. *(Id.)* Simmons also believed that John Lucas, her DYS supervisor, failed to comply with the terms of the agreement regarding her work assignments. (*Amend. Compl.* at P.1). As an example of DYS's non-compliance, Simmons points to a letter Lucas wrote to her regarding her return to work, which she described as "very demanding and intimidating." *(Id.)*.

On July 14, 1999, Simmons wrote to the Vice President of AFSCME and requested that the union file a grievance on her behalf based on her position that DYS had failed to comply with the terms of the agreement. (*Compl.* at Exh. 1). In her letter, Simmons alleged that DYS personnel improperly contacted her physician, requested that she return to work prior to a medical release from her physician, and held a meeting to determine her return to work without consulting her or her union. *(Id.)*.

In response to her request, AFSCME processed Simmons's grievance through the first two of its four-step grievance process. (*Id.* at Exh. 5–6). The first and second steps of the process failed to resolve Simmons' grievance. At some point after the failed grievance process, Simmons filed a complaint against DYS with the EEOC. AFSCME assigned Angela Williams, a union steward, to represent Simmons at an EEOC hearing conducted as part of the administrative agency's investigation of her charges against DYS. (*Amend. Compl.* at P.1). Simmons was also dissatisfied with the manner in which Williams represented her in the EEOC hearing. According to Simmons, Williams had adequate time to prepare for the hearing but failed to do so and instead, "[s]he show up [*sic*] at the hearing with no documents or any paperwork nor did she inform the union headquarter [*sic*] of the hearing." (*Compl.* at P. 1).

**IT IS SO ORDERED.**

Additionally, Simmons maintains that, in the context of her EEOC hearing against DYS, AFSCME did not "perform their job adequately." (*Amend. Compl.* at P. 2). According to Simmons, AFSCME "improperly file [*sic*] the grievance, fail [*sic*] to properly represent me and did not file the grievance in a timely manner base [*sic*] on Article 25 procedure of the

AFSCME contract." (*Amend. Compl.* at P. 1). Simmons was not represented by counsel at the EEOC hearing. Thereafter, Simmons filed a complaint with the "State EEOC."[1] (*Id.* at p. 2). Simmons' employment with DYS ended on May 22, 2002. (*Plaintiff's Motion For Extension* at p. 3).

Simmons submitted a copy of an EEOC right to sue letter with her Complaint. Based on this right to sue letter, coupled with her general statements that DYS failed to reasonably accommodate her physical condition upon her return to work, the Court concludes that she seeks relief under the Americans With Disabilities Act, 42 U.S.C. § 12117 *et seq.* The Court also notes that Plaintiff asserts for the first time in these proceedings in her Response filed November 26, 2002 that she has been "denied union representation in violation of Title I of the American With Disabilities Act of 1990." (*Plaintiff's Response* at p. 2). In addition, the Court construes Plaintiff's pleadings as attempting to state a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

### III.

Federal Rule of Civil Procedure 12(b)(6) allows a defendant, by motion, to raise the defense of plaintiff's "failure to state a claim upon which relief can be granted." The Court is authorized to grant a motion to dismiss under 12(b)(6) only where it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In considering a 12(b)(6) motion, the Court accepts all plaintiff's allegations as true and construes the allegations in the light most favorable to the plaintiff. *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir. 1996). Where a movant seeks dismissal of a complaint filed under a civil rights statute, the Court will scrutinize the motion with special care. *Brooks v. Seiter,* 779 F.2d 1177, 1180 (6th Cir.1985). The Court also notes that allegations of *pro se* plaintiffs are held to less stringent standards than those offered by lawyers. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

### IV.

A. *Statute of Limitations for Title VII and ADA Claims*

As a prerequisite to suit, an employee must first file a charge with the EEOC for alleged violations of Title VII or American With Disabilities Act. 42 U.S.C. § 2000e–5(f)(1); 42 U.S.C. § 12117(a). Additionally, an employee must initiate his or her civil action within 90 days of receipt of a right to sue letter from the EEOC. 42 U.S.C. § 2000e–5(f)(1); *Truitt v. County of Wayne,* 148 F.3d 644, 646 (6th Cir.1998) (Title VII); 42 U.S.C. § 12117(a); *Parry v. Mohawk Motors of Mich., Inc.,* 236 F.3d 299, 306 (6th Cir.2000)(ADA), *cert. denied,* 533 U.S. 951, 121 S.Ct. 2594, 150 L.Ed.2d 752 (2001).

■ The requirement for filing a civil action within 90 days of receipt of an EEOC right to sue letter is not a "jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). In the Sixth Circuit, if a claimant moves to proceed *in forma pauperis,* the statute of

---

1. The Court concludes that Plaintiff is referring to the Ohio Civil Rights Commission ("OCRC"). The OCRC is Ohio's designated "deferral agency" and it has the authority to grant or seek relief for violations of Title VII. 29 C.F.R. § 1601.80

limitations for filing a claim under Title VII is equitably tolled during the pendency of the plaintiff's motion. *Truitt*, 148 F.3d at 647–648. After the court decides the *in forma pauperis* petition, the court should allow plaintiff the remaining period to file her complaint. *Id.* at 648. Further, the court may set a reasonable time for filing the complaint where the remainder period is unreasonably short. *Id.*

Defendant argues that this Court lacks jurisdiction to hear Plaintiff's Title VII and ADA claims because such claims are time barred by the 90–day statute of limitations. (*Def. Motion at P.6* ). Specifically, Defendant claims that after the EEOC issued Plaintiff's right to sue letter on July 11, 2001, she failed to file a complaint within 90 days of receipt and instead waited until October 18, 2001, or 99 days after the EEOC issued her right to sue letter. (*Def. Memo at P.6–7* ).

The record reflects that on October 3, 2000, Plaintiff petitioned this Court to proceed *in forma pauperis*. *(Doc. # 1)*. The *in forma pauperis* motion was filed 84 days after the EEOC mailed Plaintiff's right to sue letter.[2] Moreover, on October 3, 2000, the Court also received Plaintiff's Complaint, as evidenced by the clerk's "received" stamp on the back of the pleading. Plaintiff attached a copy of her right to sue letter to the Complaint. On October 18, 2000, the Magistrate Judge granted Plaintiff's motion to proceed *in forma pauperis;* Plaintiff's Complaint was filed the same day. *(Doc. # 2, 3)*. Under *Truitt*, Plaintiff's motion to proceed *in forma pauperis* suspended tolling of the 90–day statute of limitations period for fifteen days, or, for purposes of the instant motion, during the

period that lapsed pending the decision on her petition. Thus, Plaintiff filed her Complaint 84 days after the EEOC mailed her right to sue letter. The Court concludes that Plaintiff's Title VII and ADA claims are timely filed and are not barred by the statute of limitations.

### B. *Motion to Dismiss for Failure to State a Claim*

For purposes of the Motion to Dismiss, the Court construes Plaintiff's *pro se* pleadings as presenting claims under the ADA and Title VII. Under the ADA, the statutory definition of a disability is "a physical or mental impairment that substantially limits one or more major life activity." 42 U.S.C. § 12102(2)(A); *Sutton v. United Air Lines. Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). An entity covered by the ADA, which expressly includes labor organizations, is prohibited from unlawfully discriminating against qualified individuals with a disability in regard to hiring, advancement, discharge and other terms, conditions and privileges of employment. 42 U.S.C. § 12112(a). To state a valid claim under the ADA, a plaintiff must allege that she is a qualified individual with a disability and that she suffered an adverse employment action because of her disability. *Sutton*, 527 U.S. at 489–90, 119 S.Ct. 2139 (holding that employee's failure to state facts sufficient to support the statutory definition of a disability under the ADA is grounds for dismissal under Rule 12(b)(6)).

██ Even the most generous reading of Plaintiff's pleadings does not permit the Court to discern allegations sufficient to

---

**2.** Plaintiff attached a copy of the EEOC's right to sue letter to her Complaint. It indicated that the EEOC mailed the letter to Plaintiff on July 11, 2000. The record does not indicate when Plaintiff *received* her right to sue letter. Because the Court finds that

Plaintiff filed her complaint within 90 days of the EEOC's mailing of the letter, it does not entertain Defendant's collateral arguments speculating as to when Plaintiff *received* the letter.

state a claim under the ADA against the sole Defendant, her former union. Plaintiff's pleadings do not state that she is an individual with a disability, that she is otherwise disabled or that she is qualified for the position she holds or seeks. Plaintiff does not assert that she suffered an adverse employment action or was the subject of discriminatory treatment by AFSCME because of a disability. Plaintiff alleges simply that, as a result of Defendant's "misrepresentation," she is "impacted with more added pain and distress." (*Amend. Compl*, at P. 2) Plaintiff does contend, "[a]s far as my emotional and physical well being, my healing process and me getting better was somewhat delayed. I could not function in the capacity of a wife, mother nor my personality because of excessive emotional, physical and psychological stress from the job." (*Id.*). But, Plaintiff's allegations routinely focus on the conduct of John Lucas, DYS Supervisor, and do not relate to AFSCME. Plaintiff contends Lucas wrote a letter to her which was "very demanding, intimidating, and most of all, should not have been written by my supervisor." (*Id.* at P. 1). While these statements may be relevant to a claim against DYS, Plaintiff fails to identify any actions or failures to act on the part of AFSCME's that constitute a violation of the ADA.

Assuming as the Court must that Plaintiff's statements are true for purposes of this Motion to Dismiss, and affording due weight to Plaintiff's status as a *pro se* party, her Complaint does not offer a plain statement of fact from which the Court can infer a disability consistent with ADA's statutory definition. At best, the statements quoted above describe how Plaintiff believes she has been *affected* by DYS's conduct. Taken as a whole, however, the Court is not satisfied. that Plaintiff's averments state a cognizable claim under the ADA. Plaintiff does not allege a physical or mental impairment. She does not claim a

substantial limitation resulting from a physical or mental impairment. Plaintiff also fails to identify a recognized major life activity that has been substantially limited by any purported physical or mental impairment. Last, Plaintiff fails to allege that a disability caused Defendant to engage in any activity prohibited by the statute. For these reasons, the Court finds that the Plaintiff has failed to state a claim under the ADA. Further, amendment of her pleadings would appear to be futile.

As to the Title VII claims, the Court likewise finds that Plaintiff fails to state a claim for actionable discrimination. To state a legally sufficient cause of action under Title VII, Plaintiff must allege that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position she held or sought; and (4) either she was replaced by a member outside of the protected class or was treated differently than similarly situated members of the unprotected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Clayton v. Meijer, Inc.*, 281 F.3d 605 (6th Cir.2002).

■ Here, Plaintiff fails to allege the elements necessary to state a claim of discrimination under Title VII. Her Complaint does not state that she is a member of a protected class, is qualified for the position she held, suffered an adverse employment action, was treated less favorably than other similarly situated members of an unprotected group, or was replaced by someone outside of the protected class. The sole reference that Plaintiff makes in her pleadings to any element of a Title VII claim are statements that Lucas, her DYS supervisor, lacked supervisory experience, knowledge of cultural diversity and exhibited "discriminatory mannerism[s]." (*Amend. Compl.* at P. 2). In construing these statements in the light most favor-

able to Plaintiff and resolving factual issues in her favor, these allegations assert claims only against her employer, DYS, not ASFCME, the named Defendant in this action. These statements are insufficient to state a claim for Title VII violations against ASFCME.

The Court also examines whether Plaintiff has stated facts that might otherwise allow her claim to proceed under Title VII. With reference to an action against a labor union, Title VII provides in pertinent part:

It shall be an unlawful employment practice for a labor organization . . .

(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;

(2) to limit, segregate, or classify its membership or applicants for membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual or employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or

(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

42 U.S.C. § 2000e–2(c)

*The Court finds Plaintiff's pleadings void of any statement alleging discriminatory* conduct on the part of AFSCME that is prohibited by Title VII. The Court further notes that after his initial screening of this matter pursuant to 28 U.S.C. § 1915(e)(2), the Magistrate Judge issued an order directing Plaintiff to amend her complaint to include a short, plain statement of the grounds for the Court's jurisdiction as required under Federal Rule of Civil Procedure 8(a). (*Doc.* # 2). The

order also directed Plaintiff to amend her complaint to state a claim cognizable at law and demonstrate that she was entitled to relief. ' *(Id).* In doing so, the Court put Plaintiff on notice that her Complaint suffered from multiple infirmities and was therefore susceptible to dismissal. Nonetheless, Plaintiff's Amended Complaint, also in the form of a letter, retained many of its original infirmities and did little to amplify the factual basis supporting her ADA and Title VII claims. Further, Plaintiff's Amended Complaint ignored this Court's order that she establish the basis for its jurisdiction over her claims. For all of these reasons set forth above, Plaintiff's Title VII claims against AFSCME are dismissed.

## C. *Unfair Representation Claim*

■ Affording her filings liberal construction, Plaintiff's pleadings also raise the question of whether this Court may consider the claim of an Ohio public employee who alleges unfair representation by a union where her right to relief is both created and circumscribed by Ohio's labor relations statutes. Plaintiff's complaint fails to identify any constitutional, statutory or common law source for the rights she seeks to assert against AFSCME.

Defendant cites Ohio Revised Code § 4117 *et seq.* as the source of statutory collective bargaining rights for Ohio's public employees. Section 4111.17(B)(6) defines the failure to "fairly represent all public employees in a bargaining unit" as an unfair labor practice. Remedies for violations of Section 4117 are set forth at Section 4117.12(A). In enacting a framework for the resolution of labor-related claims, the Ohio legislature created an administrative agency, the Ohio State Employment Relations Board ("SERB"). Oh. Rev.Code § 4117.12–.13, which has exclusive jurisdiction over disputes alleging un-

fair labor practices by a union as defined by Section 4111.17. *Franklin County Law Enforcement Ass'n v. FOP, Lodge 9, Capital City,* 59 Ohio St.3d 167, 572 N.E.2d 87 (1991).

This Court has only supplemental jurisdiction over this state law claim, having dismissed all federal claims. Because, however, there is no colorable basis for asserting the claim as an independent action outside the jurisdiction of SERB, the Court exercises supplemental jurisdiction and finds that Plaintiff has failed to state a valid cause of action on these grounds.

### D. *Relief Under Fed.R.Civ.P. Rule 55(c)*

■ Last, Plaintiff moves this Court to reconsider its order of November 30, 2001 granting Defendant relief from the default entry. Plaintiff argues that *United Coin Meter Co. v. Seaboard Coastline R.R.,* 705 F.2d 839 (6th Cir.1983) compels this Court to set aside its default entry.

■ As opposed to a default judgment, the grounds for setting aside a default entry are "good cause shown," a lower evidentiary standard. *See* Fed.R.Civ.P. 55(c). A party seeking relief from a default entry must demonstrate "good cause" using the reasons enumerated under Federal Rule of Civil Procedure 60(b). *United Coin,* 705 F.2d at 845. The part of Rule 60(b) relevant here provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable ne-

glect...(6) any other reason justifying relief from the operation of judgment. Three factors govern whether relief is available under the provisions of the Rule: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense and; (3) whether culpable conduct on the part of the defendant led to the default. *Manufacturers' Industrial Relations Ass'n. v. East Akron Casting Co.,* 58 F.3d 204, 206 (6th Cir.1995) (*quoting United Coin,* 705 F.2d at 845). The third factor functions as a threshold question; if the moving party fails to make this showing, the Court need not consider evidence regarding the remaining factors. *Id.* In short, unless the party seeking relief can demonstrate that his or her other conduct resulted from inadvertence, surprise, or excusable neglect without culpability, the court need not consider the evidence, if any, showing a lack of prejudice to the non-moving party or the presence of a meritorious defense. *Id.* Because federal courts favor trials on the merits, any doubts are to be resolved in favor of setting aside the judgment. *Id.*

Plaintiff argues that, under the test announced in *United Coin,* the default order should be overturned. Specifically, Plaintiff urges that relief be denied because (1) the statute of limitations arguments against her Title VII and ADA claims do not raise a meritorious defense; (2) she will suffer prejudice from reopening the case; and (3) Defendant was culpable and thus relief is foreclosed.[3] Again, the threshold question under *United Coin* is whether a defendant can show a lack of culpability for the professed inadvertence,

---

**3.** On September 14, 2001, the Court entered an Entry of Default pursuant to Rule 55(a) in favor of Plaintiff. (Doc. # 13). After obtaining a continuance of the scheduled hearing on damages, on November 30, 2001, Defendant filed a Motion for Relief from Judgment that was granted on September 9, 2002. (*Doc.*

# 24). On December 27, 2002, Plaintiff filed a document entitled "Plaintiff's Reply to Defendant's Response to Plaintiff's Amended Complaint of Defendant's Motion to Dismiss," (Doc. # 30), wherein she urges the Court to reconsider its order setting aside the default entry.

surprise, or excusable neglect. Here, as the order setting aside the default entry sets forth, the record casts considerable doubt as to whether Defendant was properly served with multiple pleadings. For example, Plaintiff's Amended Complaint and Motion for Default were each filed with this Court without any evidence that she served the opposing party as required by Federal Rule of Civil Procedure 5(a).[4] In its Motion for Relief from Judgment or Order, Defendant submitted affidavits stating that it had not received, *inter alia,* Plaintiff's Amended Complaint or Motion for Default. (*Doc.* # 18, Exh. A, B). The Court finds the attestations in Defendant's affidavits consistent with substantial evidence in the record showing procedural irregularities in Plaintiff's pleadings, including her failure to comply with Rule 5(a).

Accordingly, Defendant's actions in this matter do not demonstrate culpability for its failure to respond to Plaintiff's Amended Complaint or Motion for Default. The Court determines that the record contains ample evidence supporting its conclusion that Defendant did not receive each pleading that Plaintiff filed with this Court. Although Plaintiff claims that, despite the omissions in her pleadings, she, in fact, served the Defendant with the documents at issue, the Court resolves this controversy in favor of allowing the matter to be judged on the merits. The Court, once again, finds that Defendant's failure to file responsive pleadings was due to inadvertence or mistake.

Having determined that the Defendant was not culpable, the Court next examines whether the facts support a claim for relief under the second prong of the *United Coin* test; to wit whether Defendant offers a meritorious defense. The Defendant is not required to prove the likelihood that the proffered defense will succeed; rather the test is whether the defense relied upon is "good at law." *United Coin,* at 845 (*quoting Keegel v. Key West & Caribbean Trading Co., Inc.,* 200 U.S.App. D.C. 319, 627 F.2d 372, 374 (D.C.Cir.1980)). Under this standard, if Defendant raises any defense cognizable at law, it is deemed to have satisfied the requirement of a meritorious defense.

In its Motion to Dismiss, Defendant presents four primary defenses: (1) failure to state a claim in accord with Fed. R.Civ.P. 12(b)(6); (2) expiration of the statute of limitations for filing a claim under Title VII or ADA; (3) lack of subject matter jurisdiction over Plaintiff's claims for unfair representation; and (4) failure to exhaust administrative remedies under Ohio's labor-relations statutes. The Court does not linger over this issue because three of the defenses that Defendant raises are meritorious, as set forth in the analysis above, and each is clearly sufficient to satisfy the second prong of the *United Coin* test.

The final factor under *United Coin* questions whether the Plaintiff will suffer prejudice if the Court grants Defendant's request for relief. Allegations of mere delay in satisfying the Plaintiff's claim are not sufficient reason to deny a motion to set aside a default order. *United Coin* at 845. Prejudice must be demonstrated by showing that delay will "result in the loss of evidence, create increased

---

**4.** Plaintiff filed an Amended Complaint with the Court on November 15, 2001. On April 17, 2001, the Court ordered Plaintiff to serve a copy of the Amended Complaint on the Defendant, noting that the record did not reflect that she had done so. (*Doc.* # 6). In compliance with the Court's order, on April 27, 2001, Plaintiff filed a certificate of service with the Court stating that she mailed a copy of the "letter" to the Defendant on April 26, 2001. (*Doc.* # 7).

difficulties of discovery, or provide greater opportunity for fraud and collusion." *INVST Financial Group, Inc. v. Chem–Nuclear Systems, Inc.,* 815 F.2d 391, 398 (6th Cir.1987).

Plaintiff argues that she will suffer prejudice as a result of delay in these proceedings. She further asserts that she will be prejudiced by the loss of evidence, increased difficulties of discovery and greater opportunity for fraud and collusion. (*Plaintiff's Rely* at P. 5). First, the Court readily concedes that some delay in the proceedings will necessarily flow from setting aside the default entry. As previously stated, this fact alone does not constitute prejudice to the Plaintiff. Second, although Plaintiff accurately recites the prejudice standard set forth in *INVST,* she offers no facts to support her assertions of prejudice. The sole amplification Plaintiff offers with respect to her claim of prejudice is her statement that setting aside the default judgment "gives DYS and AFSCME Local 11, AFL–CIO greater opportunity to engage in fraud and collusion." Plaintiff offers no further statement or evidence in support of her claim that relief from the default entry gives DYS, a non-party, and AFSCME greater opportunity to engage in fraud and collusion.

Court concludes that Defendant did not engage in culpable conduct which would foreclose relief under Rule 55(c); Defendant raised several meritorious defenses which are "good at law"; and Plaintiff has not shown that she will be prejudiced by a delay in these proceedings. Accordingly, Plaintiff's Motion for Reconsideration is denied.

## V.

In summary, with respect to Plaintiff's ADA and Title VII claims, the Court **GRANTS** Defendant's Motion to Dismiss for failure to state a claim upon which relief can be granted and **GRANTS** Defendant's Motion to Dismiss Plaintiff's unfair representation claims for failure to exhaust her administrative remedies and lack of jurisdiction. The Court also **DENIES** Plaintiff's request to set aside its order granting Defendant's Motion to Set Aside Default Judgment. The Clerk is directed to enter judgment in favor of Defendant and to remove this case from the Court's pending cases and motions list.